# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**Civil Action No. 21-cv-2340-CMA-NRN**

CHRISTOPHER TANNER, an individual,

    Plaintiff,

v.

ZACHARY A. CAMPBELL, NP, individually;
JILL M. MANNON, individually;
ALLA SHKOLNIK, individually;
DORA MOLINA, RN, individually;
ELEANA A. FLORES, individually;
RANDOLPH MAUL, MD, individually;
TINA CULLEYFORD, HSA, individually;

    Defendants.

---

# SCHEDULING ORDER

---

## 1.  DATE OF CONFERENCE AND APPEARANCES OF COUNSEL AND PRO SE PARTIES

The Scheduling/Planning Conference pursuant to Fed.R.Civ.P. 16(b) is scheduled for **December 1, 2021**, at **11:30 a.m.,** in Courtroom C-203, Second Floor, Byron G. Rogers United States Courthouse, 1929 Stout Street, Denver, Colorado, before Magistrate Judge N. Reid Neureiter. Appearing for the parties are:

| | |
|---|---|
| Erica Grossman<br>Anna Holland Edwards<br>Dan Weiss<br>HOLLAND, HOLLAND EDWARDS & GROSSMAN, LLC<br>1437 High Street<br>Denver, CO 80218<br>303-860-1331<br>erica@hheglaw.com<br>*Attorneys for Plaintiff* | Matthew R. Laird<br>Isobel S. Thomas<br>THOMAS KEEL & LAIRD, LLC<br>50 S. Steele Street, Suite 450<br>Denver, CO 80209<br>303-372-6130<br>mlaird@thomaskeel.com<br>*Attorneys for Plaintiff* |

| | |
|---|---|
| Kathryn A. Starnella<br>Wells, Anderson & Race, LLC<br>1700 Broadway, Ste. 1020<br>Denver, CO 80290<br>303-830-1212<br>kstarnella@warllc.com<br>*Attorney for Defendants* | |

## 2. STATEMENT OF JURISDICTION

This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983 and 42 U.S.C. § 1988.  The Jurisdiction of this Court is further invoked pursuant to 28 U.S.C. §§ 1331, and 1343.

## 3. STATEMENT OF CLAIMS AND DEFENSES

a. **Plaintiff:**

Christopher Tanner was a 45-year-old inmate at the Colorado Department of Correction's ("CDOC") Denver Reception and Diagnostic Center ("DRDC") who was abandoned in a known medical crisis by Defendants, resulting in his transfer to the hospital near death, significant illness, the loss of most of his fingers and toes and portions of his hands and feet. Mr. Tanner was denied timely care for bacterial pneumonia, which could have been treated. Instead, his pneumonia was allowed to progress into sepsis and septic shock and he has suffered permanent disabling injuries because of Defendants' deliberate indifference.

In January of 2020, Mr. Tanner was housed at DRDC, a transitional facility used by CDOC to assess and classify prisoners as they come into the system, and to house prisoners with special medical needs. DRDC thus has more medical capabilities than other CDOC facilities.  Mr. Tanner was housed at DRDC for monitoring of his Suboxone treatment and because he was eligible for parole in the spring of 2020.

On the morning of March 14, 2020, Mr. Tanner woke up with a splitting headache, cough, and body aches that lasted all day. At about 3:00 a.m. on the morning of March 15th, he woke up feeling extremely hot and began to vomit on the floor of his cell. Mr. Tanner passed out, and his cellmate, Michael Sferrazza, called several times for medical help for a man who was obviously very sick. Mr. Tanner's alarming condition was conveyed to Defendant NP Mannon, who ordered several diagnostic tests. But despite the "STAT" order on these tests Mr. Tanner was not otherwise observed for the next several hours.

Mr. Tanner told Defendant Shkolnik that he had a severe headache all day the day before, woke up around 3:00 a.m. because he was so hot, was vomiting, and that he lost consciousness. She disregarded these symptoms and repeatedly accused Mr. Tanner of taking illegal drugs and faking his illness. She also ignored Mr. Tanner's alarming vital signs: elevated pulse, elevated respirations, very low oxygen saturations, between 87% and 88%, and an extremely high temperature of 105.8 degrees.

These alarming vital signs were conveyed to Defendant NP Mannon, who ordered IV fluids and acetaminophen, knowing full well that IV fluids and over-the-counter pain medicine do nothing to treat infection or sepsis. While the IV fluids were being administered, Mr. Tanner became so lethargic that Defendant Shkolnik had to use a sternal rub to arouse him. All reasonably trained caregivers understand that a man with these vital signs, who has passed out multiple times, and who needs pain technique like a sternal rub to revive him, needs to be transferred to the hospital immediately. Mr. Tanner's abnormal vital signs and condition were also conveyed to Defendant Dr. Maul, who ordered that Mr. Tanner and his cellmate get COVID tests but did not order Mr. Tanner to be sent to the hospital.

The next day, March 16th, at 10:30 a.m., Defendant Nurse Supervisor Molina assessed Mr. Tanner, and found him hunched over in a chair and diaphoretic about 45 minutes after she arrived. Mr. Tanner reported that he had a productive cough for two days, difficulty breathing, body aches, loss of appetite, and pain in his right mid-to-posterior ribcage.

Ms. Molina reported these symptoms, as well as Mr. Tanner's diminished lung sounds, to Defendant NP Campbell. Defendants Campbell and Molina, together with Defendant HSA Culleyford, jointly decided to keep Mr. Tanner onsite and "defer provider assessment," despite Mr. Tanner's obvious need for an emergency send-out to the hospital.

Even as Mr. Tanner's blood pressure dropped precipitously to 94/64 and his oxygen saturation numbers remained critically low—86%, his pulse and respirations were elevated and his lung sounds were diminished on the left, and absent on the right, NP Campbell, who again chose to keep Mr. Tanner onsite.

As Mr. Tanner continued to decline, his cellmate Mr. Sferrazza watched his decline and called for help over ten times, repeatedly pushing the emergency button in his cell and declaring a medical emergency. Rather than meaningfully respond to this obvious medical emergency, medical and correctional staff accused Mr. Sferrazza and Mr. Tanner of lying and told them to stop pushing the button.

Nearly 36 hours after Mr. Tanner's cellmate had first called out for emergency medical attention for an obviously very sick man, NP Campbell, Dr. Maul, and HSA Culleyford finally arranged for Tanner's emergent transfer to the hospital. He arrived at UCHealth Anschutz's emergency department in respiratory failure and severe septic shock. UCHealth caregivers saved Mr. Tanner's life with IV fluids, antibiotics, and pressor medications. Because of the amount of

4

pressors were required to keep him alive, Mr. Tanner lost adequate blood flow to his extremities, causing limb ischemia and digital necrosis of his hands and feet.

Because of Defendants' deliberate indifference to Mr. Tanner's obvious medical needs, Mr. Tanner ultimately had to have significant portions of both hands and both feet amputated, including bilateral TM amputations on his legs/feet, amputations of his left hand at the wrist joint, and multiple finger amputations on his right hand. He has endured significant pain and suffering, loss of limb, lost earnings capacity, and permanent disability. Mr. Tanner's new disability and its associated dependence have also caused him to suffer from PTSD, depression, and anxiety. He continues to deal with pain that does not seem to improve, and he continues to consult with surgeons about possible additional amputations of the rest of his feet, so he could get better prosthetics, achieve better balance, and endure less pain. He has also permanently lost the ability to work in surveying and drafting, the field he worked in for nearly 20 years and had a job offer in as part of his parole plan before all of this happened.

Mr. Tanner's entire world has been made much smaller by Defendants' deliberate indifference, and he has to teach himself new ways to do everything, both physically and emotionally, in every aspect of his life. To redress this injustice, Mr. Tanner has brought claims under 42 U.S.C. § 1983 against Defendants for deliberate indifference to his known serious medical needs in violation of the Fourteenth Amendment.

    b.    **Defendants**:

This 42 U.S.C. § 1983 lawsuit arises from a medical emergency that Plaintiff Christopher Tanner suffered on March 15 and March 16, 2020, at Denver Reception and Diagnostic Center, a Colorado Department of Corrections (CDOC) facility. Plaintiff Tanner's medical emergency

coincided with the onset of the COVID-19 pandemic, which set the world into chaos, out of fear of the mysterious, highly contagious virus of unknown origin.

COVID-19 had not yet breached the walls of any CDOC facility in March 2020, though it had breached the walls of prisons in other states to dire effect. CDOC officials braced themselves for the eventual likelihood that COVID-19 would breach their prison walls. CDOC officials kept watch for the telltale symptoms of COVID, such as fever, cough, respiratory problems, headache, and nausea or vomiting. According to the Complaint, these are the symptoms Plaintiff Tanner experienced and exhibited on March 15, and 16, 2020. The Complaint's allegations demonstrate that the CDOC medical staff provided care and monitored Plaintiff's symptoms with great caution; they did not delay or deny treatment or disregard and fail to take reasonable measures to abate a substantial risk of harm to Plaintiff.

Defendants deny Plaintiff Tanner's allegations and deny that they violated his constitutional rights. For their defenses and affirmative defenses, Defendants assert that: (1) Mr. Tanner's Complaint fails, in whole or in part, to state a claim upon which relief may be granted; (2) Mr. Tanner's rights have not been violated and he has been afforded all the rights, privileges, and immunities granted by the United States Constitution; (3) Mr. Tanner's claims against Defendants may be barred in whole or in part by absolute, limited, or qualified immunity; (4) Mr. Tanner's claimed damages, if any, were caused by third person(s) over whom no Defendant had control; (5) Mr. Tanner has failed to mitigate his damages, if any; (6) Mr. Tanner's claims arising from any mental and emotional damages are barred in whole or in part by the Prison Litigation Reform Act's physical injury requirement; (7) Mr. Tanner is not entitled to the relief requested; (8) Defendants' actions and applicable CDOC procedures and regulations and state laws are

supported by the legitimate penological interests, goals and objectives, and constitute the least restrictive means of effectuating those interests, goals, and objectives; (9) the Court lacks subject matter jurisdiction to grant declaratory relief on past conduct; (10) Mr. Tanner's claims are barred, in whole or in part, by a lack of personal participation; (11) Mr. Tanner's claims are barred, in whole or in part, by a lack of supervisory liability; and (12) any claim for punitive or exemplary damages against Defendants in their individual capacities is barred, limited, reduced or in the alternative, unconstitutional and in violation of Defendants' due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.

### 4. UNDISPUTED FACTS

The following facts are undisputed:

1. At all times pertinent hereto, Plaintiff Christopher Tanner was a citizen of the United States of America and a resident of the State of Colorado.

2. At all times relevant hereto, Defendant Zachary Campbell, NP, was a resident of Colorado.

3. At all times relevant hereto, Defendant Jill M. Mannon was a resident of Colorado.

4. At all times relevant hereto, Defendant Alla Shkolnik was a resident of Colorado.

5. At all times relevant hereto, Defendant Dora Molina, RN, was a resident of Colorado.

6. At all times relevant hereto, Defendant Eleana Flores was a resident of Colorado.

7. At all times relevant hereto, Defendant Randolph Maul, MD, was a resident of Colorado.

8. At all times relevant hereto, Defendant Tina Culleyford, HSA, was a resident of

Colorado.

9. At all times relevant hereto, Defendants acted under the color of state law.

10. At all times relevant hereto, Plaintiff Christopher Tanner was in Colorado Department of Corrections' custody.

## 5. COMPUTATION OF DAMAGES

a. **Plaintiff**:

Plaintiff Christopher Tanner seeks all appropriate relief at law and equity; economic losses on all claims as allowed by law; compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial; punitive damages on all claims allowed by law and in an amount to be determined at trial; attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law; pre- and post-judgment interest at the appropriate lawful rate; any further relief that this court deems just and proper, and any other relief as allowed by law.

Plaintiff seeks compensatory damages for his ongoing physical injuries, including physical suffering and permanent disability, as identified in the Complaint. Plaintiff also seeks damages for his emotional distress, including loss of quality of life, pain and suffering, and other non-economic losses, past, present, and future, as more particularly pled in the Complaint, and as will be testified to by Plaintiff, experts and caregivers.

Plaintiff has also incurred special damages, including significant medical bills and related healthcare expenses. Plaintiff will continue to incur further medical expenses and life-care-related expenses involving economic loss and life-care planning, in amounts to be determined at the time

of expert disclosures and at trial. Plaintiff is still gathering documentation of his extensive medical bills and charges, though bills gathered at the time of this writing exceed $406,000.00. The actual charges are continuing and expected to be higher.

Plaintiff has suffered lost past and future earnings, and impaired earnings capacity, in ongoing amounts to be ascertained by an economic expert at the time of expert disclosures and at trial. Plaintiff is collecting documentation of his lost earnings and will disclose them as they are received.

In addition to compensatory, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully, or with a reckless or wanton disregard of the constitutional rights of Mr. Tanner.

Plaintiff is also entitled to attorneys' fees and costs, and prejudgment and post-judgment interest and costs as allowable by federal law.

    b. **<u>Defendants</u>:**

Defendants are not seeking damages at this time. Defendants reserve the right to assert any and all entitlement to costs and attorneys' fees as set forth by applicable federal or Colorado state law.

### 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

    a. Date of Rule 26(f) meeting: November 10, 2021.

    b. Names of each participant and party he/she represented:

Anna Holland Edwards, Dan Weiss, and Matt Laird for the Plaintiff;

Kathryn Starnella for Defendants.

    c.   Statement as to when Rule 26(a)(1) disclosures were made or will be made.

    Rule 26(a)(1) disclosures will be made by agreement on November 24, 2021.

    d.   Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).

    None.

    e.   Statement concerning any agreements to conduct informal discovery:

    None.

    f.   Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.

The parties have agreed to the use of a unified exhibit numbering system and have agreed in a general sense to take all reasonable steps to reduce discovery and other litigation costs. Otherwise, there are no specifically agreed-upon procedures to reduce discovery or litigation costs.

    g.   Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

The parties do not anticipate that this case will involve extensive amounts of electronically stored information ("ESI"). The parties have taken steps to preserve any emails and other ESI which may exist regarding this matter. The parties agree that all ESI will be produced in electronic form unless production in electronic form is not possible, and the parties agree to exchange ESI in PDF format to the fullest extent feasible. The parties agree to each utilize a single Bates labeling system (*i.e.*, one set of Bates numbers for each party) to identify disclosures and discovery to reduce discovery costs. The parties further agree to work cooperatively to avoid discovery disputes related to electronically stored information and to be guided by the Sedona Principles to resolve any disputes which may arise concerning ESI.

      h.        Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.

Pursuant to Fed. R. Civ. P. 26(f), the parties briefly discussed the possibility for a prompt settlement or resolution of the case. The parties agreed any further discussions of the sort are premature at this time until further disclosures have been made and discovery have been conducted, as the parties have differing views as to the merits of the case. The parties agree that they will continually reassess the prospects of settlement as this case progresses and that appropriate discussions may be entertained following adequate disclosures − including for experts − and discovery in the case in order to make such discussions or a settlement conference an economical use of time and expense.

## 7. CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY LIMITATIONS

      a.        Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.

With respect to interrogatories:

Plaintiff may serve 30 interrogatories on Defendants.

Defendants collectively may serve 30 interrogatories on the Plaintiff.

Plaintiff states that based on undersigned counsel's experience in very similar previous 1983 cases, this is reflective of the amount of discovery necessary. These numbers are based on what undersigned believes is likely to be sufficient to conduct the necessary targeted discovery and will not be used to conduct unnecessary discovery.

With respect to depositions:

The parties shall be limited to 12 depositions per side, in addition to retained experts. This numerical limit includes the named parties.

  b. <u>Limitations which any party proposes on the length of depositions</u>.

The Parties do not propose any modifications to the limitations on the length of depositions except as otherwise provided below. Except as otherwise provided herein, a deposition is limited to one day of seven hours as provided in Fed. R. Civ. P. 30(d)(2), unless the parties otherwise stipulate.

  c. <u>Limitations which any party proposes on the number of requests for production and/or requests for admission</u>.

Plaintiff may serve 30 Requests for Production of Documents on Defendants.

Defendants collectively may serve 30 Requests for Production of Documents to Plaintiff.

Plaintiff may serve 25 Requests for Admission to Defendants.

Defendants collectively may serve 25 Requests for Admission to Plaintiff.

  d. <u>Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions:</u>

July 19, 2022 (45 days before the proposed discovery cut-off date of September 2, 2022).

  e. Other Planning or Discovery Orders

None.

## 9.  CASE PLAN AND SCHEDULE

  a. Deadline for Joinder of Parties and Amendment of Pleadings: February 22, 2022

  b. Discovery Cut-off: September 2, 2022.

  c. Dispositive Motion Deadline: October 3, 2022.

  d. Expert Witness Disclosure:

1. The parties shall identify anticipated fields of expert testimony, if any:

Plaintiff anticipates calling witnesses in the following possible fields: internal medicine and/or infectious disease, correctional healthcare, nursing care, economics, life care, vocational rehab, and any expert necessary for rebuttal and/or impeachment purposes. Plaintiff may designate experts in other areas as well. Plaintiff may call non-retained medical experts who have cared for Plaintiff to testify as to their care and treatment of him, without limitation.

Defendants anticipate expert disclosures in the following fields: (a) infectious disease and/or internal medicine; and (b) any experts necessary to rebut and/or impeach experts of the opposing party. Defendants may also call non-retained medical experts involved in Plaintiff's care, without limitation.

2. Limitations which the parties propose on the use or number of expert witnesses.

5 retained experts per side.

3. The parties shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or July 1, 2022.

4. The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before August 1, 2022.

e. Identification of Persons to Be Deposed:

The parties are presently determining their discovery needs. Accordingly, the schedule listed below is not exhaustive and is not necessarily presented in the order in which the parties will conduct depositions. Further, the dates and times of depositions are tentative and have not yet been determined or noticed. Finally, the parties wish to retain the opportunity to reschedule depositions or take other depositions as may be suggested by discovery.

| Name of Deponent | Date of Deposition | Time of Deposition | Expected Length |
|---|---|---|---|
| Christopher Tanner | TBD | TBD | TBD |

| | | | |
|---|---|---|---|
| Deborah Tanner | TBD | TBD | TBD |
| Zachary Campbell, NP | TBD | TBD | TBD |
| Jill Mannon, NP | TBD | TBD | TBD |
| Alla Shkolnik, NP | TBD | TBD | TBD |
| Dora Molina, RN | TBD | TBD | TBD |
| Eleana Flores | TBD | TBD | TBD |
| Randolph Maul, MD | TBD | TBD | TBD |
| Tina Cullyford, HSA | TBD | TBD | TBD |
| As of yet unidentified medical staff in the area of Mr. Tanner's cell | TBD | TBD | TBD |
| As of yet unidentified deputy staff in the area of Mr. Tanner's cell | TBD | TBD | TBD |
| As of yet unidentified other inmates in the area of Mr. Tanner's cell | TBD | TBD | TBD |
| Medical staff at CU-Anschutz Emergency Department, UC Health, UCHealth Plastic and Reconstructive Surgery Clinic, and/or American Medical Response (AMR) | TBD | TBD | TBD |
| Medical staff at Kindred Hospital Aurora | TBD | TBD | TBD |
| 30(b)(6) | TBD | TBD | TBD |
| Other health care providers at DRDC, currently unknown | TBD | TBD | TBD |

| Michael Sferrazza | TBD | TBD | TBD |
|---|---|---|---|
| Further witnesses as discovered through litigation | TBD | TBD | TBD |
| Experts | TBD | TBD | TBD |

## 10. DATES FOR FURTHER CONFERENCES

    a.    Status conferences will be held in this case at the following dates and times:

_____

    b.    A final pretrial conference will be held in this case on _____ at \_\_\_\_ o'clock \_\_.m.

## 11. OTHER SCHEDULING MATTERS

    a.    Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.

None.

    b.    Anticipate length of trial and whether trial is to the court or jury.

Plaintiff's counsel believe the trial is likely to take 7 to 10 days given the number of experts and the medical nature of the claims involved. Defendants' counsel believes the trial is more likely to be completed in 5 to 7 days. The parties will continue to confer prior to the setting of the trial as the case evolves and work together to present evidence as efficiently as possible.

    c.    Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building, La Plata County Courthouse 1060 E. 2nd Avenue, Suite 150, Durango, CO 81301.

None.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by serving the motion contemporaneously upon the moving attorney's client.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

### 13.  AMENDMENTS TO SCHEDULING ORDER

The Scheduling Order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, this _____ day of _____, 20___.

BY THE COURT:

_____
N. Reid Neureiter
United States Magistrate Judge

APPROVED:

| */s/ Anna Holland Edwards* <br> Anna Holland Edwards <br> Erica Grossman <br> Dan Weiss <br> HOLLAND, HOLLAND EDWARDS & GROSSMAN, LLC <br> 1437 High Street <br> Denver, CO 80218 <br> 303-860-1331 <br> anna@hheglaw.com <br> erica@hheglaw.com <br> dan@hheglaw.com <br> *Attorneys for Plaintiff* | */s/ Matthew R. Laird* <br> Matthew R. Laird <br> Isobel S. Thomas <br> THOMAS KEEL & LAIRD, LLC <br> 50 S. Steele Street, Suite 450 <br> Denver, CO 80209 <br> 303-372-6130 <br> mlaird@thomaskeel.com <br> *Attorneys for Plaintiff* |

| | |
|---|---|
| <u>*/s/ Kathryn A. Starnella*</u><br>Kathryn A. Starnella<br>WELLS, ANDERSON & RACE, LLC<br>1700 Broadway, Ste. 1020<br>Denver, CO 80290<br>303-830-1212<br>kstarnella@warllc.com<br>*Attorney for Defendants* | |